IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:15-CV-104-FL

SCOTT A. MERY,                    )
                                  )
                Plaintiff,        )
                                  )
        v.                        )                    ORDER
                                  )
CAROLYN W. COLVIN,                )
Acting Commissioner of Social Security,   )
                                  )
                Defendant.        )

This matter is before the court on the parties' cross motions for judgment on the pleadings. (DE 17, 19). Pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), United States Magistrate Judge Robert B. Jones, Jr., entered a memorandum and recommendation ("M&R"), wherein it is recommended that the court deny plaintiff's motion, grant defendant's motion, and affirm defendant's decision. (DE 22). Plaintiff timely objected to the M&R, and defendant did not respond. In this posture, the issues raised are ripe for ruling. For the reasons that follow, the court adopts the M&R as its own, denies plaintiff's motion, grants defendant's motion, and affirms defendant's final decision.

## BACKGROUND

On February 8, 2012, plaintiff filed an application for disability insurance benefits and protectively filed an application for supplemental security income, alleging a disability onset date of January 1, 2012. Plaintiff's application was denied both initially and upon reconsideration. On September 19, 2012, plaintiff filed a request for a hearing before an administrative law judge ("ALJ"), who, after a hearing held October 22, 2013, denied plaintiff's application by decision dated

January 27, 2014. Later, plaintiff timely requested review by the Appeals Council, and submitted additional evidence as part of his request. The Appeals Council determined the new evidence was relevant to a period after the ALJ's decision, denied review on April 16, 2015, and the ALJ's January 27, 2014 decision became defendant's final decision. On May 5, 2015, plaintiff filed suit in this court, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking review of defendant's decision.

## COURT'S DISCUSSION

A.     Standard of Review

The court has jurisdiction under 42 U.S.C. § 405(g) to review defendant's final decision denying benefits. The court must uphold the factual findings of the ALJ "if they are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996). "Substantial evidence is . . . such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quotations omitted). The standard is met by "more than a mere scintilla of evidence but . . . less than a preponderance." Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). In reviewing for substantial evidence, the court is not to "re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for defendant's. Craig, 76 F.3d at 589.

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling," including "a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). An ALJ's decision must "include a narrative discussion describing how the evidence supports each conclusion," Monroe v. Colvin, ___ F.3d ___, 2016 WL

2

3349355, *11 (4th Cir. 2016) (quoting Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015)), and

an ALJ "must build an accurate and logical bridge from the evidence to his conclusion." Id. at *10

(quoting Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000)).

To assist it in its review of defendant's denial of benefits, the court may "designate a

magistrate judge to conduct hearings . . . and to submit . . . proposed findings of fact and

recommendations for the disposition [of the motions for judgment on the pleadings]." See 28 U.S.C.

§ 636(b)(1)(B). The parties may object to the magistrate judge's findings and recommendations,

and the court "shall make a de novo determination of those portions of the report or specified

proposed findings or recommendations to which objection is made." Id. § 636(b)(1). The court does

not perform a de novo review where a party makes only "general and conclusory objections that do

not direct the court to a specific error in the magistrate's proposed findings and recommendations."

Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir. 1982). Absent a specific and timely filed objection,

the court reviews only for "clear error," and need not give any explanation for adopting the M&R.

Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005); Camby v. Davis,

718 F.2d 198, 200 (4th Cir. 1983). Upon careful review of the record, "the court may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1).

The ALJ's determination of eligibility for Social Security benefits involves a five-step

sequential evaluation process, which asks whether:

> (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a
> medical impairment (or combination of impairments) that are severe; (3) the
> claimant's medical impairment meets or exceeds the severity of one of the
> impairments listed in [the regulations]; (4) the claimant can perform [his or her] past
> relevant work; and (5) the claimant can perform other specified types of work.

Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (citing 20 C.F.R. § 404.1520). The burden of proof is on the social security claimant during the first four steps of the inquiry, but shifts to the Commissioner of Social Security ("Commissioner") at the fifth step. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

In the instant matter, the ALJ performed the sequential evaluation. At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since January 1, 2012, the alleged onset date of plaintiff's disability. At step two, the ALJ found that plaintiff had the following severe impairments: relapsing remitting multiple sclerosis ("MS") and cervicalgia status-post ACDF at C3-6. The ALJ found plaintiff also to have the following non-severe impairments: left hip post-arthroscopy, chronic low back pain, intermittent lower extremity radicular symptoms, lightheadedness and dizziness, and mild bilateral optic neuropathy. However, at step three, the ALJ determined that these impairments were not severe enough to meet or, either individually or in combination, medically equal one of the listed impairments in the regulations ("listings" or "listed impairments"). See 20 C.F.R. § 404, Subpt. P, App. 1 [hereinafter "Listing of Impairments"].

Before proceeding to step four, the ALJ determined that during the relevant time period plaintiff had the residual functional capacity ("RFC") to perform medium exertional work, subject to the following limitations: "never climb ladders, ropes, or scaffolds[; and only] . . . occasionally climb ramps or stairs." (Tr. 26–27). "The claimant can frequently balance, stoop, crouch, kneel, and crawl. He can frequently reach overhead with both arms." (Id. at 27). In making this assessment, the ALJ found plaintiff's statements about the severity of his symptoms not fully credible. At step four, the ALJ concluded plaintiff was able to perform his past relevant work. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy

that plaintiff can perform. Thus, the ALJ concluded that plaintiff was not disabled under the terms of the Social Security Act.

B.     Analysis

Plaintiff objects to the magistrate judge's treatment of three issues: listed impairments, medical opinion evidence, and RFC. First, plaintiff argues that the ALJ erred in determining that his impairments did not meet or equal any listed impairment, particularly listings 1.02, 1.04, and 11.09. Second, plaintiff argues that the ALJ failed to accord proper weight to the opinions of certain physicians. Third, plaintiff argues that the ALJ erred in determining that he is capable of performing medium exertional work, such as his past relevant work.

1.     Listed Impairments

Plaintiff argues that the ALJ should have found him disabled at step three, on the basis of three listed impairments: 1.02, entitled "Major dysfunction of a joint," specifically an inability to ambulate; 1.04, entitled "Disorders of the spine," specifically those disorders resulting in compromise of a nerve root or spinal cord; and 11.09, entitled "Multiple sclerosis," specifically where MS is accompanied by other forms of impairment.

The Listing of Impairments "describes for each of the major body systems impairments that [defendant] consider[s] to be severe enough to prevent an individual from doing any gainful activity," irrespective of vocational factors such as "age, education, or work experience." 20 C.F.R. §§ 404.1525(a), 416.925(a). The listed impairments "are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect." Sullivan v. Zebley, 493 U.S. 521, 529–30 (1990). "Each impairment is defined in terms of several specific medical signs, symptoms, or laboratory test results." Id. at 530. A social security claimant bears

the burden of demonstrating that his "medically determinable" impairments, those impairments expected to either result in death or "last for a continuous period of at least 12 months," 20 C.F.R. §§ 404.1525(c)(5), (d); 416.925(c)(5), (d), meet or, either individually or in combination, medically equal one of the listed impairments. Id. §§ 404.1525(c)(4)–(5), 416.925(c)(4)–(5); Pass, 65 F.3d at 1203 (holding that social security claimants bear the burden of proof at step three).

Even though a social security claimant may not "meet" the criteria for a listed impairment, his impairments may "medically equal" those criteria. 20 C.F.R. §§ 404.1525(c)(5); 416.925(c)(5). A social security claimant's impairments medically equal a listed impairment where they are "at least equal in severity and duration to the criteria of any listed impairment." Id. §§ 404.1526(a), 416.926(a). In other words, a social security claimant "must present medical findings equal in severity to all the criteria for the one most similar listed impairment." Zebley, 493 U.S. at 531; accord 20 C.F.R. §§ 404.1526(a), 416.926(a). However, the social security claimant's evidence must be targeted to the most analogous listed impairment's criteria, not the social security claimant's overall functional limitations. See Social Security Ruling ("S.S.R.") 83-19, 1983 WL 31248, at *91–92; see also S.S.R 96-6p, 1993 WL 374180, at *1–2 (reinstating S.S.R. 83-19); Zebley, 493 U.S. at 531.

a.    Listing 1.02, Joint Dysfunction

Plaintiff argues that the ALJ should have found him disabled at step three, due to his impairments meeting or equaling listing 1.02, on the bases that "the amount of arthritis in his hip . . . will require a hip replacement in two to three years," and "the most he can stand/walk before having to sit and rest is approximately 30 minutes." (DE 24, 4–5). In support of his argument, plaintiff relies upon his own testimony, and the opinion of a treating physician, David Jones, M.D. In response, defendant argues that the ALJ did not err in determining that plaintiff did not meet or

6

equal listing 1.02, particularly where the ALJ relied upon evidence of a physical examination performed by William Lestini, M.D.

Listing 1.02 provides that a social security claimant is disabled if he has "[m]ajor dysfunction of a joint" due to any cause. Listing of Impairments, § 1.02. "Major dysfunction of a joint" is defined as "gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s)," with "findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s)." Id. In addition, and as relevant here, the criteria for listing 1.02 require "[i]nvolvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively." Id. § 1.02A. "Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities," and examples of ineffective ambulation are "the inability to walk without the use of a walker, [or] two crutches or two canes." Id. § 1.00B.2.b(1), (2); see McAuley v. Colvin, No. 7:12-CV-311-D, 2013 WL 7098724, at *9 (E.D.N.C. Dec. 13, 2013).

The ALJ's analysis of substantial evidence demonstrated that plaintiff's impairments did not meet or medically equal listing 1.02. The ALJ considered plaintiff's testimony "that his abilities to stand, sit, and walk have not changed since the [hip] surgery. He said that he could only stand for 30 to 45 minutes." (Tr. 27). However, upon examination of the record, the ALJ found that "[t]his is not consistent with the objective evidence from [plaintiff's] Treating Orthopedist. [Post-operation] [f]ollow-up records reflect that the claimant's left hip healed quickly and without any lasting functional limitations." (Id. at 28). In particular, the ALJ noted, "[f]ive weeks after surgery, the claimant's surgeon, David Jones, M.D., noted there were no post-operative complications, the

7

claimant's symptoms had improved, . . . and he was 100% weight-bearing." (Id.).  Therefore, Dr.

Jones's post-operative treatment notes provide more than a mere scintilla of evidence sufficient to

support the ALJ's conclusion that plaintiff did not meet the criterion of being unable to ambulate

effectively.  See Laws, 368 F.2d at 642; Zebley, 493 U.S. at 530 (requiring that a social security

claimant "present medical findings equal in severity to all the criteria").

In addition, plaintiff argues that his need for another hip replacement in the future is evidence

that his impairment medically equaled the criteria for listing 1.02.  However, as noted above, the

ALJ considered evidence of plaintiff's impairment following his left hip arthroscopy and determined

that plaintiff was "100% weight-bearing," based, in part, upon ambulation requiring the use of both

of plaintiff's hips.  (Tr. 25).  Moreover, although Dr. Jones recommended in December 2013 that

the same surgery be performed on plaintiff's right hip some time in the future, the medical record

ends shortly thereafter, and the ALJ rendered her decision in January 2014.  (Tr. 577).  At that time,

the ALJ noted no evidence in the record indicating that plaintiff was impaired due to some

likelihood of future surgery, and instead focused on her determination that plaintiff recovered with

no functional limitations from a similar surgery on his left hip.  (Tr. 25).  Nor does plaintiff offer any

evidence that such a future surgery would result in an impairment medically equal to any criteria

under listing 1.02.

Therefore, where the ALJ relied upon substantial evidence in determining that plaintiff's

impairments during the relevant time period did not medically equal listing 1.02, see Zebley, 493

U.S. at 530, and where the ALJ noted signs of plaintiff's positive response to ongoing treatment, the

court shall not undertake to re-weigh the evidence in considering the effect, if any, of plaintiff's

future surgery.  See Craig, 76 F.3d at 589; see also Molina v. Colvin, No. 5:12-CV-259-FL, 2013

WL 4039416, at *6 (E.D.N.C. Aug. 7, 2013) (upholding the ALJ's assessment of a plaintiff's

8

condition, despite the possibility of future hip replacement surgery). Accordingly, plaintiff's objection must fail, where the ALJ relied upon substantial evidence sufficient to supports its conclusion that plaintiff's impairments do not meet or medically equal listing 1.02. See Richardson, 402 U.S. at 401.[1]

      b.     Listing 1.04, Spine Disorder

Plaintiff argues that the ALJ should have found him disabled at step three, due to his impairment meeting or equaling listing 1.04, on the basis that he "suffers from chronic back pain and degenerative disc disease." (DE 24, 2). In support of his argument, plaintiff relies upon his own testimony, magnetic resonance imaging ("MRI") of his spine and lumbar region, and the opinion of a treating physician, Gregory Bertics, M.D. Defendant argues that the ALJ did not err in determining that plaintiff did not meet or equal listing 1.04, particularly where the ALJ relied upon relevant portions of an opinion by Dr. Lestini.

Under listing 1.04, a claimant is "disabled" upon showing a disorder of the spine, resulting in compromise of a nerve root or the spinal cord, and exhibiting certain distinguishing characteristics of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis. Listing of Impairments, § 1.04. Nerve root compression may be characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, and motor loss; while spinal arachnoiditis and lumbar spinal stenosis may be established by appropriate medically acceptable imaging that confirms difficulties ambulating or maintaining posture. Id.

---

[1] Plaintiff does not object to the ALJ's omission of listing 1.02 from her analysis. At the time of the decision, the ALJ noted that neither plaintiff nor any medical expert had argued that plaintiff's impairments met or equaled any listing. The M&R concludes that the ALJ's failure to discuss listing 1.02 was harmless in light of plaintiff's failure to demonstrate that his impairments met or equaled the listing. See Locklear v. Colvin, No. 7:14-CV-154-FL, 2015 WL 4740786, at *4 (E.D.N.C. Aug. 10, 2015). Having reviewed the M&R's analysis on this point, and finding no clear error, see Diamond, 416 F.3d at 315; Camby, 718 F.2d at 200, the court incorporates herein and adopts as its own the M&R's conclusion.

Here, the ALJ concluded that "[t]he evidence of record does not reveal that the claimant has undergone radiographic imaging studies demonstrating evidence that a nerve root or the spinal cord was compromised. Nor does the evidence of record show that the claimant has neurological deficits, spinal arachnoiditis, or lumbar spinal stenosis." (Tr. 26). In further discussing the reasons for her conclusion, the ALJ considered the MRIs relied upon by plaintiff in his objection. For example, the ALJ noted that "(MRI) of [plaintiff's] lumbar spine showed degenerative disc disease"; however, the MRI did not demonstrate the distinguishing characteristics required for lumbar spinal stenosis, where "physical examination of the lumbar spine has shown no pain, swelling, edema, muscle spasm, or tenderness to palpation." (Tr. 25); see Gross, 785 F.2d at 1165 (finding that diagnoses without a corresponding functional limitation of listing-level severity are insufficient to demonstrate disability).

The ALJ considered also plaintiff's testimony regarding longstanding back pain, intermittent lower extremity radicular symptoms, and the accompanying MRIs from 2010, but found that this evidence did not meet the criteria under listing 1.04, where plaintiff's "treating Orthopedist examined the claimant recently in September 19, 2013 and indicated that the claimant's lumbar stenosis . . . was "not bothering him very much." (Tr. 25) (emphasis in original). Accordingly, the ALJ relied upon "more than a mere scintilla of evidence" in finding that she was "not persuaded that the low back pain has more than a minimal impact on the ability of the claimant to perform work activities." (Tr. 25); see Laws, 368 F.2d at 642.

Lastly, the ALJ considered the portion of Dr. Bertics's opinion that plaintiff relies upon to show that his cervical and lumbar spine disease caused him to be unable to function in his current job. However, the ALJ concluded that Dr. Bertics's statements were "based in large part, if not entirely, on the claimant's subjective report of symptoms. They are internally inconsistent with the

10

earlier opinion offered [by Dr. Bertics], and are not consistent with diagnostic imaging showing stable MS with no active lesions, or other neurology treatment records." (Tr. 33). In addition, for reasons elaborated upon below, the ALJ accorded little weight to Dr. Bertics's opinion on the state of plaintiff's nerve roots, spine, and lumbar, where "this Neurologist [Bertics] admits that he treats the claimant for multiple sclerosis – not for lumbar or cervical spine problems. . . . Dr. Bertics is not an orthopedist, and his opinions on orthopedic impairments are not persuasive." (Id.).

Therefore, while plaintiff did complete MRIs of his nerve root and spine, the ALJ relied upon adequate, substantial evidence in determining that they did not show his nerve root or spine were compromised. See Craig, 76 F.3d at 589. The ALJ was justified also in relying upon substantial evidence that plaintiff did not demonstrate distinguishing characteristics of nerve root compression, spinal arachnoiditis, and lumbar spinal stenosis, as required to meet criteria under listing 1.04. See id. Accordingly, because the ALJ's conclusion is supported by substantial evidence, plaintiff's argument that his impairments meet, or medically equal, the criteria for listing 1.04 is overruled. See Gross, 785 F.2d at 1165.

c.      Listing 11.09, Multiple Sclerosis

Plaintiff argues that the ALJ should have found him disabled at step three, due to his impairment meeting or equaling Listing 11.09, on the bases that his long term multiple sclerosis is growing progressively worse, and recent exacerbations caused flare-ups that were minimally susceptible to treatment. In support of his argument, plaintiff relies upon neurologic exams related to his multiple sclerosis, and the opinions of two treating physicians, Drs. Bertics and Singaravelu Jagadeesan, M.D. Defendant argues that the ALJ did not err in determining that plaintiff did not meet or equal listing 11.09, particularly where the ALJ noted that plaintiff's flare-ups were treatable with prednisone.

11

To meet listing 11.09 requires a diagnosis of multiple sclerosis, accompanied by one of the following:

A.     Disorganization of motor function as described in 11.04B;[2] or

B.     Visual or mental impairment as described under the criteria in 2.02, 2.03, 2.04, or 12.02; or

C.     Significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity, demonstrated on physical examination, resulting from neurological dysfunction in areas of the central nervous system known to be pathologically involved by the multiple sclerosis process.

Listing of Impairments, § 11.09.

Here, the ALJ determined that plaintiff's MS did not meet the criteria for listing 11.09, concluding that plaintiff failed to establish evidence of "significant and persistent disorganization of motor function in two extremities resulting in sustained disturbance of gross and dexterous movements or gait and station; a visual or mental impairment[;] or significant, reproducible fatigue of motor function with substantial muscle weakness on repetitive activity." (Tr. 26). In further discussing the reasons for this conclusion, the ALJ considered the evidence relied upon by plaintiff to support his objection.

For example, the ALJ noted Dr. Jagadessan's opinion letter, which states that plaintiff's MS limited him to only ten to twelve hours of work per week. However, in considering the letter, the ALJ found that "[t]his opinion is completely without support in this letter, and there are no Neurology treatment records in the file prior to this date so there is no objective findings to support his opinion." (Id. at 32). Moreover, the ALJ noted countervailing evidence within the letter itself,

---

[2] Listing 11.04B requires "[s]ignificant and persistent disorganization of motor function in two extremities, resulting in sustained disturbance of gross and dexterous movements, or gait and station." Listing of Impairments, § 11.04B.

where "this Neurology treatment record also references the claimant's current 'job is one of merchandising grocery stores, which is a physically active job that requires carrying, lifting, crouching, pulling and pushing.'" (Id. at 32–33) (emphasis in original).

The ALJ considered also plaintiff's testimony and the neurological exams related to his multiple sclerosis, which plaintiff cites as support for his impairment meeting or equaling listing 11.09. The ALJ acknowledged plaintiff's testimony that he was diagnosed with MS more than 30 years ago, but found that it had been relatively well controlled since 1997, and determined that "[n]ot until November 2012 did physical examination show decreased sensation from the thigh to the ankle but preserved sensation in the feet bilaterally." (Id. at 28). In addition, the ALJ noted that the same examination "was otherwise unremarkable, with normal gait, mental status, cranial nerves, funduscopic, facial sensation, and coordination." (Id.).

For reasons described more fully elsewhere in this order, the ALJ accorded little weight to Dr. Bertics's opinion that plaintiff's MS caused intermittent problems with sensory loss and gait difficulties, where largely it was based upon plaintiff's subjective complaints, and where it contradicted Dr. Bertics's own treatment notes. Instead, the ALJ assigned relatively more weight to Dr. Jagadeesan's assessment of plaintiff's medical treatment record, on the basis of which he opined, "This is a patient who has a 30 year history of relapsing, remitting multiple sclerosis, it sounds like he's had a relatively benign course without the development of any extreme burden of disease." (Id. at 32–33). Accordingly, upon consideration of the evidence relied upon by plaintiff in his objection, and in light of other substantial evidence in the record, the ALJ was justified in concluding that the findings cited by plaintiff do not reflect listing-level severity for purposes of listing 11.09. See Richardson, 402 U.S. at 401.

Lastly, plaintiff disputes the ALJ's characterization of his MS as relatively stable. In

particular, plaintiff points to two recent flare-ups that each lasted two weeks and were treatable with prednisone. However, "[i]f a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross, 785 F.2d at 1166; see also 20 C.F.R. § 404.1530(b); Purdham v. Celebrezze, 349 F.2d 828, 830 (4th Cir. 1965) ("[A] claimant who has a disabling impairment which can reasonably be classified as remediable is not entitled to receive disability benefits.").

Here, the ALJ considered plaintiff's recent flare-ups and determined that they demonstrated only intermittent symptoms, and that they were treatable with medication. The ALJ explained the reasoning underlying this conclusion: "Aside from two brief exacerbations of multiple sclerosis, throughout the relevant period the claimant has continued to work and perform his activities of daily living, and has not sought treatment beyond conservative care for his MS which has shown to be 'relatively stable.'" (Tr. 28). Therefore, where the ALJ considered the evidence relied upon by plaintiff, explained how that evidence did not satisfy the criteria for listing 11.09, and based her determination upon substantial evidence in the record showing that plaintiff's impairments do not reflect listing-level severity, plaintiff's objection must be overruled. See Craig, 76 F.3d at 589.

2.      Medical Opinions

Plaintiff argues that the ALJ erred in assigning little weight to the opinions of four treating physicians: Drs. Jones, Bertics, Jagadeesan, and Lestini. In support of his argument, plaintiff points to certain portions of the physicians' opinions that are consistent with one another, and asserts that their status as specialists adds weight to their opinions. In addition, plaintiff argues that the ALJ failed to recontact Dr. Jones to determine whether additional information was available to resolve an ambiguity in evidence that precluded determination of plaintiff's disability. Defendant argues that the ALJ did not err in assigning little weight to the treating physicians' opinions, and that the ALJ properly gave great weight to the opinions of two non-examining state agency physicians who

determined that plaintiff was capable of performing medium exertional work.

An ALJ must weigh and evaluate all medical opinions received, regardless of their source. 20 C.F.R. §§ 404.1527(c), 416.927(c). Generally, opinions from treating sources are given greater weight than opinions from non-treating sources, such as consultative examiners. Id. §§ 404.1527(c)(2), 416.927(c)(2). However, any medical opinion, even one from a treating source, may be given less weight if it is not well supported or if it is inconsistent with other evidence in the record. Id. §§ 404.1527(c)(3)–(4), 416.927(c)(3)–(4); see Craig, 76 F.3d at 590. Other factors also may influence an ALJ's assignment of weight to a medical opinion, such as supportability and consistency of an opinion, as well as the medical expert's area of speciality. Id. § 404.1527(c)(3)–(5).

While an ALJ is under no obligation to accept any medical opinion, he or she must nevertheless explain the weight afforded such opinions. See S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); see also Russell v. Comm'r of Soc. Sec., 440 F. App'x 163, 164 (4th Cir. 2011). An ALJ has a duty to explain the administrative decision so as to enable meaningful judicial review. "While the [Commissioner] is empowered . . . to resolve evidentiary conflicts, the [Commissioner], through the ALJ, is required to explicitly indicate 'the weight given to all relevant evidence.'" Murphy v. Bowen, 810 F.2d 433, 437 (4th Cir. 1987) (quoting Gordon v. Schweiker, 725 F.2d 231, 236 (4th Cir. 1984)). If such an explanation is provided, then the court "must defer to the ALJ's assignments of weight unless they are not supported by substantial evidence." Dunn v. Colvin, 607 F. App'x 264, 271 (4th Cir. 2015).

First, plaintiff argues that the ALJ improperly discounted a portion of Dr. Lestini's opinion in which the physician noted, on June 20, 2013, that plaintiff "spent much of the interview today about [sic] the process of trying to obtain disability from his work. I told him I would fill out any

forms for him as necessary." (Tr. 462). Plaintiff relies also upon other portions of Dr. Lestini's treatment notes from plaintiff's visit that day, such as his recommendation that plaintiff be limited to lifting ten pounds, and that he should never climb or be exposed to unprotected heights.

The ALJ considered these portions of Dr. Lestini's opinion, but assigned them little weight. The ALJ explained her decision as follows: "This part of the opinion is entirely inconsistent with Dr. Lestini's treatment records, including objective findings from physical exams performed on Nov. 15, 2012 and Feb. 21, 2013, as well as subsequent physical exam findings from June 20, 2013." (Id. at 32). With regard to Dr. Lestini's treatment notes from June 20, 2013, the ALJ noted that "physical examination of the cervical spine showed no tenderness, swelling, deformities, atrophy, weakness, and evidence of instability. Range of motion was full and painless . . . . Physical examination of bilateral lower extremities was normal, with intact sensation and normal gait." (Id. at 29) (emphasis in original). In light of this evidence, the ALJ gave great weight to the portion of Dr. Lestini's opinion wherein he determined "that the claimant is able to stand/walk 6 hours per day, sit 6 hours per day, and perform unlimited reaching in all directions," but the ALJ assigned "little to no weight to Dr. Lestini's opinion that the claimant is limited to lifting 10 lb., has limited ability push/pull in both arms and legs, and should never climb or be exposed to unprotected heights." (Id. at 31–32). Where the ALJ's determination is adequately supported by substantial evidence, and where the ALJ sufficiently explains reasons for assigning certain weights to different portions of Dr. Lestini's opinion, the court defers to the ALJ's assignments of weight. See Richardson, 402 U.S. at 401; Murphy, 810 F.2d at 437. Accordingly, plaintiff's objection to the ALJ's determination on this basis is overruled. See Dunn, 607 F. App'x at 271.

Second, plaintiff argues that the ALJ erred in assigning too little weight to portions of opinions by Drs. Bertics, Jones, and Jagadeesan, where certain portions were consistent with one

16

another, and where each physician is a specialist. Although a physician's specialization affects the degree of weight due his opinion, it is only one factor in a non-exhaustive list of several others, such as supportability and consistency, which the ALJ considered here. See 20 C.F.R. § 404.1527(c)(1)–(6). With respect to supportability and consistency, the ALJ considered those portions of each physician's opinion upon which plaintiff relies, and explained reasons for assigning them little weight as follows.

With respect to Dr. Bertics's opinion, plaintiff relies upon the "Letter regarding disability," for Dr. Bertics's opinion that plaintiff's "MS interferes with his ability to be fully active." (Tr. 445). However, the ALJ determined this portion of Dr. Bertics's opinion "to be based in large part, if not entirely, on the claimant's subjective report of symptoms." (Id. at 33). In addition, the ALJ explained that it is "internally inconsistent with the earlier opinion offered, and . . . not consistent with diagnostic imaging." (Id.). Where the ALJ relies upon substantial evidence for her determination, and sufficiently explains the reasons for it, plaintiff's objection to the ALJ's treatment of Dr. Bertics's opinion is overruled. See Craig, 76 F.3d at 589.

Similarly, with respect to Dr. Jagadeesan's opinion, the ALJ considered the portion of the physician's opinion relied upon by plaintiff, and described substantial evidence in the record contradicting it: "[T]here are no Neurology treatment records in the file prior to this date. . . . [A] follow-up MRI of the brain showed the claimant's MS was stable with no evidence of any active lesions. Dr. Jagadeesan's opinion is also without support from later records." (Tr. 32) (emphasis in original). Where the ALJ relies upon substantial evidence for her determination, and where the ALJ sufficiently explains the reasons for it, plaintiff's objection to the ALJ's treatment of Dr. Jagadeesan's opinion is overruled. See Craig, 76 F.3d at 589.

With respect to Dr. Jones's opinion, the ALJ provided three reasons for assigning little

weight to the section of the opinion relied upon by plaintiff: "First, it was a prospective opinion and thus not based on the claimant's actual condition after the procedure. Second, it does not place a time limitation on the 'recovery period'. Third, records from a Treating Orthopedist reflect that there were no post-op complications after the arthroscopy, the claimant's symptoms in his left hip had improved." (Tr. 32). Where the ALJ relies upon substantial evidence for her determination, and where she sufficiently explains the reasons for it, plaintiff's objection to the ALJ's treatment of Dr. Jones's opinion is overruled. See Craig, 76 F.3d at 589.

Lastly, plaintiff objects to the ALJ's treatment of Dr. Jones's opinion on the basis of her failure to recontact the physician to determine whether additional information was available to resolve an ambiguity in evidence that precluded determination of plaintiff's disability. However, the subsections of the regulations plaintiff relies upon to support his argument are not applicable, where they were removed some years before the ALJ rendered her decision, and where those sections now apply to consultative examinations. Compare 20 C.F.R. §§ 404.1512(e)(1), 416.912(e)(1) (2011), with 20 C.F.R. §§ 404.1512(e), 416.912(e).

Instead, the ALJ's decision of whether to recontact treating physicians is governed, in part, by 20 C.F.R. § 416.920b. Subsection (b) provides, "If any of the evidence in your case record, including any medical opinion(s), is inconsistent, we will weigh the relevant evidence and see whether we can determine whether you are disabled based on the evidence we have." Id. § 416.920b(b). As relevant here, subsection (c) states:

> If the evidence is consistent but we have insufficient evidence to determine whether you are disabled, or if after weighing the evidence we determine we cannot reach a conclusion about whether you are disabled, we will determine the best way to resolve the inconsistency or insufficiency. The action(s) we take will depend on the nature of the inconsistency or insufficiency. . . . We might not take all of the actions listed below.

Id. § 416.920b(c). As it pertains to plaintiff's objection, one of the listed actions the ALJ may take is to "recontact your treating physician, psychologist, or other medical source." Id. § 416.920b(c)(1). Taken together, "the regulations in past and current form clearly state that the ALJ's duty to recontact a treating source arises only when the evidence as a whole is inadequate to determine the issue of disability." Hawley v. Colvin, No. 5:12-CV-260-FL, 2013 WL 6184954, at *6 (E.D.N.C. Nov. 25, 2013) (reconfirming application of the rule after the regulations were modified).

Under this standard, the ALJ had no obligation to recontact Dr. Jones, where Dr. Jones's opinion was inconsistent with other evidence in the record, and where the ALJ relied upon substantial evidence in assigning little weight to certain portions of Jones's opinion. See 20 C.F.R. § 416.920b; Richardson, 402 U.S. at 401. Therefore, the ALJ was able to weigh other relevant evidence in the record in order to determine the degree of plaintiff's disability without recontacting Dr. Jones. See 20 C.F.R. § 416.920b(b). Accordingly, plaintiff's objection on the basis of the ALJ's decision not to recontact Dr. Jones is overruled.

In sum, the ALJ did not err with respect to assigning little weight to portions of opinions by Drs. Jones, Bertics, Jagadeesan, and Lestini, where the ALJ's determinations were adequately supported by substantial evidence, see Richardson, 402 U.S. at 401, and where the ALJ sufficiently explained reasons for assigning such weight in each instance. See Murphy, 810 F.2d at 437. Accordingly, the ALJ's determinations are entitled to deference, and plaintiff's objection on the bases of these physicians's opinions is overruled. See Dunn, 607 F. App'x at 271.

3.     Residual Functional Capacity

Plaintiff argues that the ALJ erred in determining that he was able to perform medium work, such as his past relevant work. In support of his argument, plaintiff relies upon certain portions of

opinions by Drs. Jagadeesan; Lestini; Bertics; Jones; and Ramnik J. Zota, M.D., who performed a consultative examination of plaintiff. Plaintiff argues also that testimony by a vocational expert ("VE"), based upon specifications provided by Dr. Jones, showed that plaintiff was unable to perform his past relevant work. Defendant argues that the ALJ did not err in determining plaintiff was capable of medium exertional work, particularly where the ALJ's RFC was supported by the opinions of two state agency physicians, as well as plaintiff's testimony and work history.

Social Security Ruling 96-8p, which explains how the ALJ should assess a social security claimant's RFC, calls for a "function-by-function" assessment of a social security claimant's limitations. S.S.R. 96-8P, 1996 WL 374184, at *1. Once the required "function-by-function" assessment is complete, the ALJ must express a social security claimant's RFC in terms of exertional levels of work. See id. The "function-by-function" assessment must include a threshold level of analysis in order to allow this court to "review meaningfully" the ALJ's conclusions. Mascio, 780 F.3d at 636–37.

In a recent series of decisions, the Fourth Circuit Court of Appeals has clarified the level of analysis a reviewing court requires from an ALJ. "The record should include a discussion of whichevidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. Rather, it is the ALJ's duty to perform a "function-by-function" analysis and "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, __ F.3d __, 2016 WL 3349355, at *10 (4th Cir. 2016).

The court first addresses plaintiff's objection as it relates to physicians' opinions. With respect to opinions by Drs. Jagadeesan, Lestini, Bertics, and Jones, the portions to which the ALJ

20

assigned little weight for reasons described above are the same portions that plaintiff cites in support of his objection to the ALJ's determination of his RFC. Accordingly, for the same reasons discussed above, plaintiff's objection on the bases of these opinions is overruled. See Craig, 76 F.3d at 589; Murphy, 810 F.2d at 437.

With respect to Dr. Zota's opinion, plaintiff argues that the physician "documented that plaintiff's impairments limited his sitting and standing to about 30 minutes totaling four to six hours per 8 hour period" (DE 24, 7), which falls short of the requirement for a medium RFC. See 20 C.F.R. § 404.1567(c). However, plaintiff does not object to the M&R's conclusion that the ALJ did not err in assigning little weight to Dr. Zota's opinion. Moreover, in further explaining her decision to assign it little weight, the ALJ described the relevant portion of Dr. Zota's opinion, and discounted it on the basis that Dr. Zota's examination occurred three months prior to plaintiff's successful cervical fusion surgery. (Tr. 30). Having reviewed the M&R's analysis on this point, and finding no clear error, the court incorporates herein and adopts as its own the M&R's conclusion. See Diamond, 416 F.3d at 315. Accordingly, the ALJ's determination that Dr. Zota's opinion should be accorded little weight is entitled to deference, and plaintiff's objection on this point is overruled. See Dunn, 607 F. App'x at 271.

Lastly, the court addresses plaintiff's argument that the ALJ failed properly to account for testimony by a VE who, based upon parameters provided by Dr. Jones, stated that plaintiff was unable to perform his past relevant work, and that he would not be able to earn at least $1,000.00 per month. However, the opinion relied upon by plaintiff was one of two opinions provided to the ALJ by the VE; one opinion was based upon a hypothetical individual capable of performing medium exertional work with the same limitations as plaintiff, and the other opinion was based upon a hypothetical individual capable of performing light exertional work with the same limitations as

plaintiff. After determining that substantial evidence showed plaintiff capable of medium exertional work with certain limitations, the ALJ considered and relied upon the VE's first opinion in finding plaintiff capable of performing past relevant work, as well as other jobs existing in the national economy. (See Tr. 34).

Plaintiff relies upon Dr. Jones's opinion to support his argument that the ALJ should have given controlling weight to the VE's opinion. However, for the reasons described above, where substantial evidence supported the ALJ's determination that the relevant portion of Dr. Jones's opinion should be accorded little weight, see Richardson, 404 U.S. at 401, and where the ALJ adequately explained numerous reasons for determining that plaintiff was capable of performing medium exertional work, plaintiff's objection on the basis of the VE's testimony is overruled. See Mascio, 780 F.3d at 637. Accordingly, plaintiff's objection to the ALJ's determination that plaintiff possesses a medium RFC fails. See id.

## CONCLUSION

Based upon the foregoing, the court ADOPTS the M&R (DE 22), GRANTS defendant's motion for judgment on the pleadings (DE 19), and DENIES plaintiff's motion for the same. (DE 17). The clerk of court is DIRECTED to close this case.

SO ORDERED, this the 30th day of August, 2016.

_____
LOUISE W. FLANAGAN
United States District Judge

22